1
2
3
4
5

**UNITED STATES DISTRICT COURT**

6

**DISTRICT OF NEVADA**

7
8

ALEXANDER R. RUPERT,                          )
                                              )
9            Plaintiff,                        )        Case No. 2:11-cv-00773-JCM-GWF
                                              )
10 vs.                                         )        **ORDER AND REPORT AND**
                                              )        **RECOMMENDATION**
11                                             )
BETTY BAHIAN OLIVEROS, et al.,                )        Application to Proceed in Forma
12                                             )        Pauperis (#1) and Screening of
             Defendants.                       )        Complaint
13 _____ )

14          This matter comes before the Court on Plaintiff's Application to Proceed in Forma Pauperis

15 (#1), filed on May 13, 2011.

16                                   **BACKGROUND**

17          Plaintiff brings this Complaint against Betty Bahian Oliveros ("Betty Bahian"), a private

18 citizen, Judge Cheryl Moss, Judge Hoskiss, and the State of Nevada.  Plaintiff alleges that he was

19 denied a fair and just trial because the court had no jurisdiction to hear his divorce case.  Plaintiff

20 claims he was falsely sued for divorce by a woman, using the fictional name of Betty Bahian

21 Rupert, that was never his wife.  Plaintiff alleges it was illegal for both Judge Moss and Judge

22 Hoskiss to hear the case because an illegal immigrant cannot sue a U.S. resident, a judge cannot

23 hear a case when the plaintiff does not legally exist, and a family court judge cannot grant an

24 annulment when there was no legal marriage.  Plaintiff claims the family court lacks jurisdiction to

25 hear his divorce case because another court has already declared his marriage to be null and void

26 and adjudicated Ms. Bahian guilty of bigamy.

27          Plaintiff asserts that Betty C. Bahian falsely sued for divorce knowing that she was still

28 married to her original husband, used a non-existent name, and committed a pre-meditated

marriage for profit scam.  Plaintiff further claims that Ms. Bahian used this false marriage to obtain

U.S. citizenship and has continued to attempt to steal all the Plaintiff's assets.  Plaintiff alleges that

both the named-judges continue to support Ms. Bahian's illegal scheme.  Plaintiff alleges Ms.

Bahian has committed bank fraud and falsified documents before the court.  In light of this,

Plaintiff claims that the judges are openly aiding and abetting a criminal in the act of fraud.

Plaintiff requests that these judges be severely disciplined and be required to pay

compensation for their crimes against an American citizen.  Plaintiff further requests the following

relief: (1) Plaintiff's home be totally returned to him; (2) Ms. Bahian be convicted of bigamy; (3)

Ms. Bahian's illegally obtained citizenship be removed from her; (4) all costs and losses be

reimbursed to Plaintiff and compensation be paid by Ms. Bahian, both the named-judges, and the

State of Nevada; (5) the opposing attorney be disciplined for his unethical and illegal behavior

because he knew all the underlying facts and still acted against the Plaintiff; (6) and finally,

Plaintiff requests compensation on behalf of his daughter for all her despair, mental anguish and

loss of education throughout the years.

## DISCUSSION

I.    **Application to Proceed In Forma Pauperis**

Plaintiff filed this instant action and attached a financial affidavit to his application and

complaint as required by 28 U.S.C. § 1915(a).  Reviewing Rupert's financial affidavit pursuant to

28 U.S.C. § 1915, the Court finds that Plaintiff is unable to pre-pay the filing fee. As a result,

Plaintiff's request to proceed in forma pauperis in federal court is granted.

II.    **Screening the Complaint**

Upon granting a request to proceed *in forma pauperis*, a court must additionally screen a

complaint pursuant to 28 U.S.C. § 1915(e).  Specifically, federal courts are given the authority to

dismiss a case if the action is legally "frivolous or malicious," fails to state a claim upon which

relief may be granted, or seeks monetary relief from a Defendant/Third Party Plaintiff who is

immune from such relief.  28 U.S.C. § 1915(e)(2).  A complaint, or portion thereof, should be

dismissed for failure to state a claim upon which relief may be granted "if it appears beyond a

doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to

2

relief." *Buckey v. Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992).  A complaint may be dismissed as frivolous if it is premised on a nonexistent legal interest or delusional factual scenario.  *Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989).  Moreover, "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them."  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment.  *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

    While Plaintiff may be seeking relief under § 1983, the relief he seeks amounts to an appeal of a family court decision by Judge Moss and Hoskiss, and United States District Courts do not have jurisdiction to hear appeals from state trial court rulings.  *See, e.g., Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir.2003).  The Rooker–Feldman doctrine prevents the Court from considering claims that amount to a review of the state court's ruling. The Rooker–Feldman doctrine stems from two cases recognizing that under Article III of the Constitution Congress controls the jurisdiction of the "inferior Courts" it creates. *See* U.S. Const. art. III, § 1.  In both of those cases, parties who had lost in state court attempted to invoke the jurisdiction of the United States District Court to appeal the state-court rulings.  In both cases, the federal statutes applicable at the respective times did not give the United States District Court appellate jurisdiction over the respective controversies.  *See D.C. Ct.App. v. Feldman*, 460 U.S. 462, 476–79 (1983) (holding that denial of admission to practice law was a judicial matter, not an administrative one, making any federal jurisdiction appellate, not original, and therefore the avenue for review of a ruling of the D.C. Court of Appeals was not to the United States District Court, but to the United States Supreme Court); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923) (holding that under the statutes in place at the time, an appeal from the Indiana Supreme Court could be taken only to the United States Supreme Court, not to the United States District Court, because the jurisdiction of the latter court was strictly original).

. . .

3

Presumably, Congress could create appellate jurisdiction over state-court rulings in the United States District Court.  The question in this case, as it was in *Rooker* and *Feldman*, is whether Congress has done so.  It has not.  Plaintiff brings the case under § 1983, but this Court has no statutory jurisdiction to entertain *de facto* appeals of state trial court rulings any more than it has jurisdiction to entertain formal appeals of such rulings.  *See, e.g., Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 860 (9th Cir.2008).  The issue here, whether the named-judges acted without jurisdiction must be litigated through the state courts because the issue is "inextricably intertwined" with the state-court decision.  *See Feldman*, 460 U.S. at 483 n. 16 (stating "If the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar, then the District Court is in essence being called upon to review the state court decision.  This the District Court may not do."); *Reusser*, 525 F.3d at 859.

The Plaintiff is challenging the decision in his underlying family court case.  The Court does not have jurisdiction to hear appeals from a state court decision.  Further, Plaintiff's claims against Judge Moss and Hoskiss are impermissible because judges are absolutely immune from damages actions for judicial acts taken within the jurisdiction of their courts.  *Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir. 1988); *Imbler v. Pachtman*, 424 U.S. 409, 418 (1976).  Here, Plaintiff's allegations relate to judicial acts undertaken during Plaintiff's underlying divorce case.

Plaintiff alleges, however, that the named-judges acted outside their jurisdiction and consequently, judicial immunity does not extend to their acts.  "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978).  A clear absence of all jurisdiction means a clear lack of all subject matter jurisdiction. *Mullis v. U.S. Bankruptcy Court for Dist. of Nevada*,  828 F.2d 1385, 1389 (9th Cir. 1987).  The Supreme Court provided guidance on the distinction between an act in the clear absence of jurisdiction and an act in excess of jurisdiction.

> If a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on

4

1

> the other hand, if a judge of a criminal court should convict a
> defendant of a nonexistent crime, he would merely be acting in
> excess of his jurisdiction and would be immune.

2

3  *Stump*, 435 U.S. at 357 n. 7.  Pursuant to NRS 3.223, the family court division has original and

4  exclusive jurisdiction over matters affecting the familial unit including divorce, custody, marriage

5  contracts, community and separate property, child support, parental rights, guardianship, and

6  adoption. *Landreth v. Malik*,  251 P.3d 163, 169 (Nev., 2011).  The Court does not find that Judge

7  Moss  and Judge Hoskiss acted in clear absence of jurisdiction.  Family court judges clearly have

8  subject matter jurisdiction over a divorce action.  At best, Plaintiff's allegations only support that

9  the named-judges were acting in excess of their jurisdiction, not a clear absence of all jurisdiction.

10  Therefore, immunity extends to Judge Moss and Hoskiss, and Plaintiff's claim against them must

11  be dismissed.

12      Plaintiff's claim against Ms.  Bahian and the States of Nevada must also be dismissed.

13  Private persons are generally not acting under color of state law. *See Price v. Hawaii*, 939 F.2d 702,

14  707-08 (9th Cir. 1991).  Only where a private party conspires with state officials to deprive others

15  of constitutional rights is that party acting under color of state law.  *See Towers v. Glover*, 467 U.S.

16  914, 920 (1984).  Here, Ms. Bahian is a private individual, and Plaintiff has not alleged that she is

17  acting in conspiracy with any state official to violate Plaintiff's constitutional rights.  Further,

18  States are not persons for purposes of § 1983 actions. *See Arizonans for Official English v. Arizona*,

19  520 U.S. 43, 69 (1997).  Plaintiff's § 1983 claim against the State of Nevada is therefore legally

20  frivolous. *See Jackson v. Arizona*, 885 F.2d 639, 641 (9th Cir. 1989).

21      Plaintiff has failed to state any claim upon which relief can be granted.  The Court will

22  therefore recommend Plaintiff's Complaint be dismissed with prejudice as it is clear from the face

23  of the Complaint that the deficiencies cannot be cured by amendment. *See Cato v. United States*, 70

24  F.3d 1103, 1106 (9th Cir. 1995).

25      **IT IS HEREBY ORDERED** that Plaintiff's Application to Proceed *In Forma Pauperis* (#1)

26  is **granted**.  Plaintiff shall not be required to pre-pay the full filing fee of three hundred fifty dollars

27  ($350.00).

28  . . .

1
2
3
4

**IT IS FURTHER ORDERED** that Plaintiff is permitted to maintain this action to conclusion without the necessity of prepayment of any additional fees or costs or the giving of security therefor.  This Order granting leave to proceed *in forma pauperis* shall not extend to the issuance of subpoenas at government expense.

5

**IT IS FURTHER ORDERED** that the Clerk of the Court shall file the Complaint (#1-1).

6

### RECOMMENDATION

7
8

**IT IS HEREBY RECOMMENDED** that Plaintiff's Complaint (#1-1) be **dismissed with prejudice** based on Plaintiff's failure to state a claim upon which relief may be granted.

9

### NOTICE

10
11
12
13
14
15
16
17

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

18

DATED this 29th day of August, 2011.

19
20
21

_____
**GEORGE FOLEY, JR.**
**UNITED STATES MAGISTRATE JUDGE**

22
23
24
25
26
27
28

6